IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| In re:<br><br>The Ruins, LLC,<br><br>   Debtor.<br>―――――――――――――――<br><br>Red River State Bank,<br><br>   Plaintiff,<br><br>  v.<br><br>The Ruins, LLC; Watertown Development Company; Watertight, Inc.; Xtreme Fire Protection, LLC; Performance Spray Foam, LLC; B&W Construction, LLC; Diamond Wall System, Inc.; D&M Industries, Inc.; Top Finish Carpentry, LLC; Craig Development, LLC; Craig Holdings, LLC; Craig Properties, LLC; Jesse Craig and Codington County, South Dakota,<br><br>   Defendants.<br><br> and<br><br>Top Finish Carpentry, LLC,<br><br>   Third-Party Plaintiff,<br><br>  v.<br><br>Prevail, LLC,<br><br>   Third-Party Defendant. | **Civil No.:  25-30004**<br><br>**Chapter 11**<br><br><br><br><br>**CASE NO.:  1:25-cv-01016-CBK**<br><br>**Circuit Court for Codington County, South Dakota, Case No.:  CV-24-000068**<br><br><br>**CRAIG DEFENDANTS' BRIEF IN OPPOSITION TO RED RIVER STATE BANK'S MOTION FOR REMAND** |

[¶1]     Defendants Craig Development, Craig Holdings, Craig Properties, Jesse Craig, and The Ruins, LLC (collectively "the Craig Defendants") submit this Brief in opposition to Red River State Bank's ("RRSB") Motion to Remand. For the reasons below, remand is neither required nor appropriate under 28 U.S.C. §§ 1334(c)(2), 1334(c)(1), or 1452(b).

## INTRODUCTION

[¶2]     RRSB's remand brief tries to frame this as a routine state-law foreclosure. It is not. This case is part of the same multi-entity lending relationship already examined by Judge Shon Hastings in the United States Bankruptcy Court for the District of North Dakota. That court identified detailed allegations of misrepresentation, lending-limit violations, undisclosed document changes, participation failures, and permanent-financing failures - all involving the same bank officers, same practices, and same construction-phase financing that affect Parkside, Generations, and The Ruins.  See Ex. A - *Hastings Decision on Motion to Dismiss*.

[¶3]     The Ruins foreclosure cannot be carved out of that context. Its asset value, lien structure, maturity sequence, lending-limit compliance, and participation-funding failures all directly impact the bankruptcy estate. Under the Eighth Circuit's broad "*conceivable effect*" test, this alone establishes related-to jurisdiction under 28 U.S.C. § 1334(b).

[¶4]     As shown below and fully supported by relevant case law, mandatory abstention fails because the state forum cannot "*timely adjudicate*" the multi-entity factual issues already identified by the bankruptcy court. The litigation overlaps factually with Parkside and Generations, and remand would duplicate discovery, fragment judicial findings, and risk inconsistent rulings across cases involving the same lending relationship.

[¶5]    Discretionary abstention and equitable remand also fail because the federal forum is already more familiar with the underlying facts, and federal retention promotes judicial economy and consistent adjudication across interconnected projects.  Thus, remand should be denied.

## LAW AND ANALYSIS

[¶6]    Federal district courts are provided with "*original but not exclusive jurisdiction of all civil proceedings…related to cases under title 11*." 28 U.S.C. § 1334(b). This has been interpreted to be an exceptionally broad grant of authority to federal courts. *Celotex Corp. v. Edwards,* 514 U.S. 300, 307-08 (1995)  At a minimum, this "*related to*" language must be read to give district court's jurisdiction over more than simple proceedings involving property of the debtor or the estate. *Celotex*, 514 U.S. at 308. Congressional intent is clear: federal courts have sweeping jurisdiction in matters related to bankruptcy proceedings.

[¶7]    The goal of this broad jurisdictional grant is to centralize all proceedings in federal court. *Sunshine Dev., Inc. v. F.D.I.C.,* 33 F.3d 106, 114 (1st Cir. 1994); *In re PRS Ins. Group, Inc*., 335 B.R. 77, 83 (Bankr. D. Del. 2005).

[¶8]    For motions, like RRSB's, seeking mandatory abstention under 28 U.S.C. § 1334, it is *the movant* who bears the burden of proof. *In re WorldCom, Inc. Sec. Lit.*, 293 B.R. 308, 331 (S.D.N.Y. 2003) ("*A party seeking mandatory abstention must prove each of the following*" six elements). If the movant "*fails to prove any one of the statutory requirements*" it is not entitled to mandatory abstention. *Id*. (emphasis in original); *In re Total Transportation, Inc*., Nos. 4-85-1909, 4-87-230, 1988 WL 68043 at *2 (Bankr. D. Minn. Feb. 29, 1988) (the court need not consider mandatory remand which the movant has utterly failed to establish).

[¶9]    Thus, for an order for mandatory abstention to apply, RRSB must show that:

- a timely motion is made;

- the claim or cause of action is based upon state law;

- the claim or cause of action is 'related to' a bankruptcy case, but did not 'arise in' or 'arise under' the bankruptcy case;

- such action could not have been commenced in federal court absent § 1334 jurisdiction;

- such action is commenced in state court; and (6) such action can be timely adjudicated in state court.

*In re Grubbs Const. Co*., 305 B.R. 476, 481 (Bankr. W.D. Ark. 2003); *WorldCom* at 331.

[¶10]  With this precedent in mind, RRSB's motion fails.

## I.  <u>MANDATORY ABSTENTION DOES NOT APPLY</u>

[¶11]  Mandatory abstention requires each element under 28 U.S.C. § 1334(c)(2). If even one element fails, the motion fails.

### A.    The case cannot be "timely adjudicated" in state court.

[¶12]  This is the fatal defect in RRSB's abstention theory. Mandatory abstention under 28 U.S.C. § 1334(c)(2) collapses the moment timely adjudication fails, and the record here makes that failure unavoidable.  RRSB neglects to mention that they must show that this case can be timely adjudicated in a state court. Timely adjudication requires an examination by the Court of the state court's calendar, the status of the bankruptcy proceeding, the complexity of the issues, and whether the state court proceeding would prolong the administration, or liquidation of the estate. See *In re DeLorean Motor Co*., 49 B.R. 900, 912 (Bankr. E.D. Mich. 1985).

[¶13]  "*A naked assertion that the matter can be timely adjudicated in the state court is insufficient to satisfy this requirement*." *In re Pinnacle Corp*., 237 B.R. 240, 244 (Bankr. D. Conn. 1999) (citation omitted). A "*plaintiff may not meet his burden by arguing that a proceeding can be*

*timely adjudicated in state court.*" *Janazzo, Sr. v. Financial Corp.*, No. 01-C-6939, 2002 WL 54541, at *3 (N.D. Ill. 2002).

[¶14]   RRSB has presented no evidence or even an argument regarding timeliness of proceeding in federal versus state court. It is their burden to do so. They present no argument or evidence on the state court's calendar; a state court trial in this case could be years away.  They present no argument or evidence on the status of the bankruptcy proceeding; the administration has just begun, weighing toward this Court's retention of this case. They present no argument or evidence on the complexity of the issues; these issues are comfortably within this Court's capabilities.

[¶15]   Courts do not assess "*timeliness*" in the abstract. They evaluate real-world litigation conditions - complexity, interdependence with the bankruptcy estate, the need for coordinated discovery, the existence of overlapping federal matters, and the practical ability of a state court to resolve multi-entity lending disputes without delay or duplication. See, e.g., *Titan Energy, Inc. v. FERC*, 837 F.2d 325, 330–31 (8th Cir. 1988) (explaining that where the factual matrix is intertwined with bankruptcy administration, federal retention is appropriate to avoid inconsistent outcomes and duplicative proceedings); *In re Williams*, 256 B.R. 885, 892 (B.A.P. 8th Cir. 2001) (timeliness turns on comparative efficiency and avoidance of fragmented adjudication).

[¶16]   This case fails that test for several independent reasons.

> **B. The factual issues are already defined by the federal bankruptcy proceedings - and they are not simple.**

[¶17]   Judge Hastings identified extensive allegations regarding RRSB's conduct in the Parkside and Generations projects:

- misrepresentations to the borrowers;

- undisclosed lending-limit violations;

- swapping and altering loan documents;

- failures to secure promised permanent financing;

- participation-funding failures; and

- material factual disputes that precluded summary judgment.

[¶18]   These issues are part of a single, multi-project lending relationship involving the same bank officers, the same internal approval processes, and the same construction-phase financing structure. The Ruins is simply the next project in sequence, subject to the same funding mechanisms, lending-limit pressures, and participation-funding failures that the bankruptcy court has already examined.

[¶19]   Pretending The Ruins can be severed out and handed to a state trial court as a "*routine foreclosure*" is not advocacy - it is fiction.  See Ex. A.

### C.   A state court cannot timely adjudicate this case without recreating the federal discovery record from scratch.

[¶20]   The same documents, the same witnesses, and the same banking-practice evidence used in the Parkside and Generations proceedings will be required here. Codington County would have to:

- re-depose the same bank officers;

- re-review the same lending-limit documents;

- re-litigate the participation-funding failures; and

- re-evaluate cross-project lien structures and maturity sequencing.

[¶21]   Duplicating discovery destroys timeliness as a matter of law. Courts reject abstention where remand requires "*re-litigation of issues already developed in the bankruptcy forum*" or risks inconsistent factual determinations. *Titan Energy*, 837 F.2d at 331.

### D. The multi-entity nature of the lending relationship requires coordinated adjudication to avoid inconsistent rulings.

[¶22]   The Eighth Circuit repeatedly emphasizes that related-to jurisdiction exists when the outcome could "*conceivably affect*" the bankruptcy estate. *Dogpatch Props., Inc. v. Dogpatch U.S.A., Inc.*, 810 F.2d 782, 786 (8th Cir. 1987). When the same lending practices span multiple entities - Parkside, Generations and The Ruins - inconsistent rulings are not just possible; they are guaranteed if the cases are split between federal and state fora.

### II. <u>THE EIGHTH CIRCUIT REQUIRES A "*CONCEIVABLE EFFECT*" ON THE HANDLING OR ADMINISTRATION OF THE BANKRUPTCY ESTATE IN ORDER FOR JURISDICTION TO EXIST</u>

[¶23]   Given Congress' intent to give broad jurisdiction to the federal courts, the Eighth Circuit has appropriately given the phrase "*related to*" a wide reach. In order to be "*related to*" a bankruptcy case, a proceeding only needs to "*conceivably have any effect on the estate being administered in bankruptcy...*" *In re Dogpatch U.S.A., Inc.*, 810 F.2d 782, 786 (8th Cir. 1987). Additionally, actions relate to bankruptcy proceedings when the outcome could affect the debtor and could impact the handling and administration of the estate. *Id.* (citation omitted).

[¶24]   Courts have held that to be "*conceivable*" there must only be a mere possibility.  A key word in [the] test is "*conceivable*." Certainty, or even likelihood, is not a requirement. Bankruptcy jurisdiction will exist so long as it is possible that a proceeding may impact on "*the debtor's rights, liabilities, options, or freedom of action*" or the "*handling and administration of the bankrupt estate*." *In re Marcus Hook Dev. Park Inc.*, 943 F.2d 261, 264 (3rd Cir. 1991). *In re Dow Corning Corp.,* 86 F.3d 482, 491 (6th Cir. 1996).

[¶25]   Contrary to RRSB's assertion, "*related to*" jurisdiction exists not only when the litigation has an effect on the debtor's rights and liabilities, but also whenever the outcome of the litigation conceivably affects the handling and administration of the estate.  Nothing in Codington County's docket suggests it can adjudicate cross-project banking conduct with the speed, breadth, or procedural coordination the federal system already provides. And mandatory abstention requires proof - actual evidence - that the state court can dispose of the matter *timely*. See *In re Timberon Water Co.*, 574 B.R. 809, 822 (Bankr. D.N.M. 2017) (burden is on the movant, and speculative assertions of timeliness are insufficient).

[¶26]   RRSB has no such evidence. It simply asserts - without data, without scheduling projections, and without addressing the bankruptcy overlap -  that the state court "*can handle it*."

### A.  Because this case is intertwined with disputes already under federal supervision, abstention would fragment judicial findings and slow administration of the estate.

[¶27]   Timeliness turns not only on the speed of a state-court docket but also on whether abstention would impede the administration of the bankruptcy estate. See *In re Midwest Emergency Assocs.*, 228 B.R. 271, 276 (Bankr. D. Neb. 1999). Splitting the lending-relationship litigation across two courts would delay resolution of the estate's claims and expose the estate to conflicting determinations regarding:

- asset valuation;

- lien priority and cross-collateralization;

- lending-limit compliance;

- participation-agreement performance; and

- the bank's credibility and internal decision-making.

[¶28]   No state court can "*timely*" adjudicate a case while simultaneously recreating the factual record of two other federal matters.  This element of mandatory abstention collapses under the weight of the record. The case is too intertwined, too complex, and too dependent on prior federal judicial work for a remand to Codington County to be anything but duplicative and slow. RRSB cannot meet its burden, and mandatory abstention fails.

### B.  This proceeding is "related to" a bankruptcy case and easily satisfies the Eighth Circuit's broad jurisdictional standard.

[¶29]   As stated above, Courts have held that to be "*conceivable*" there must only be a mere possibility.

[¶30]   The Ruins foreclosure easily exceeds this jurisdictional threshold.  The Ruins property is a significant estate-linked asset whose valuation and lien structure directly affect the Craig entities.

[¶31]   RRSB's own filings concede The Ruins is cross-referenced and cross-collateralized within the broader Craig project framework. The bankruptcy court has already examined Parkside and Generations as part of a unified lending relationship, not discrete, siloed loans. Judge Hastings identified shared approval processes, shared bank officers, shared participation structures, and shared irregularities in the bank's conduct.

[¶32]   That is more than sufficient to establish related-to jurisdiction. Property valuation alone is enough. See *In re Titan Energy*, 837 F.2d at 330–31 (jurisdiction exists when the proceeding could influence valuation or distribution of assets).

### C.  Any deficiency judgment arising from The Ruins foreclosure will directly increase estate liabilities.

[¶33]   Courts treat foreclosure deficiency exposure as an obvious basis for related-to jurisdiction because the amount of deficiency alters:

- the debtor's liabilities;

- the claim pool in bankruptcy;

- distribution priorities;

- feasibility of reorganization or liquidation plans; and

- the overall administration of the estate.

[¶34]   Even RRSB admits that a deficiency is possible. Under the Eighth Circuit's test, the *possibility* of a deficiency suffices. See *Dogpatch*, 810 F.2d at 786 (conceivable outcomes affecting the estate make the matter related). Mandatory abstention cannot attach when federal jurisdiction exists.

### D.  Participation-funding failures and lending-limit violations span all three projects - Parkside, Generations, and The Ruins - affecting the entire estate.

[¶35]   Judge Hastings noted substantial allegations of improper participation management, undisclosed lending-limit violations, and document alterations by RRSB's officers. Those findings were not loan-specific; they were relationship-wide. They implicate:

- the bank's internal compliance;

- enforceability of notes and security instruments;

- the legitimacy of maturity accelerations;

- the bank's right to foreclosure relief; and

- the true economic liability of the Craig entities across all projects.

[¶36]   If those practices infected The Ruins - and the record strongly indicates they did - then the foreclosure action will necessarily affect the estate's rights and obligations, satisfying *Titan Energy*.

### E.  Permanent financing failures identified by Judge Hastings affect valuation and deficiency exposure across projects.

[¶37]   The bankruptcy court highlighted RRSB's alleged failure to secure permanent financing after the construction phase - a failure that directly influenced the collapse of Parkside and Generations. The Ruins was part of the same developmental timeline and the same pool of capital, backed by the same promise of permanent financing.

[¶38]   If permanent-financing failures rendered earlier projects unsustainable, that factual determination will also frame whether RRSB's enforcement actions on The Ruins are lawful, inflated, or procedurally barred.

[¶39]   Any ruling on permanent financing - whether in federal court or state court - will have a *conceivable effect* on the estate's remaining assets and debts. That is all § 1334(b) requires.

### F.  Estate administration depends on adjudicating the entire lending relationship together - not in fragmented state-court pieces.

[¶40]   Federal retention promotes orderly administration. Splitting The Ruins foreclosure off to Codington County increases the risk of:

- inconsistent findings on bank misconduct;

- conflicting interpretations of cross-project financing;

- inconsistent valuations of overlapping collateral; and

- inconsistent rulings on the bank's participation-funding failures.

[¶41]   The Eighth Circuit has repeatedly held that such risks themselves establish related-to jurisdiction. See *Titan Energy*, 837 F.2d at 331; *Dogpatch*, 810 F.2d at 786.

### G.  Applying the Eighth Circuit standard, mandatory abstention cannot attach.

[¶42]   Once related-to jurisdiction exists, abstention is *never* mandatory unless all § 1334(c)(2) elements are met. Here, RRSB cannot even get past the first step - federal jurisdiction clearly exists. And once jurisdiction attaches under the "*conceivable effect*" test, mandatory abstention collapses.

### H.  This case could have been brought in federal court independent of bankruptcy.

[¶43]   Mandatory abstention requires that the action "*could not have been commenced in a court of the United States absent jurisdiction under section 1334.*" 28 U.S.C. § 1334(c)(2). RRSB treats that requirement as an afterthought. It should not have, because this element alone destroys its motion.

[¶44]   Under controlling law, the question is simple: Could this case have been filed in federal court on a non-bankruptcy basis at the time it was commenced? If the answer is yes, mandatory abstention is categorically unavailable. See *In re Farmland Indus.*, 567 F.3d 1010, 1018 (8th Cir. 2009).

[¶45]   RRSB is incorporated in Minnesota. The borrower entities and guarantors involved in The Ruins project are citizens of North Dakota and/or South Dakota (and, in some instances, other states). There is no allegation, no evidence, and no conceivable argument that complete diversity is lacking.

[¶46]   Diversity jurisdiction requires only that all plaintiffs be diverse from all defendants. See *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 n.3 (1996). That condition is plainly met here. No Defendant or Third-Party Defendant shares Minnesota citizenship with RRSB.  Moreover,  the South Dakota LLCs are owned by a North Dakota member, and the remaining mechanic's lien Defendants are South Dakota entities.

[¶47]   RRSB's assertion that the case "*could not have been commenced in federal court*" is simply wrong and not based in any factual or legal basis.

[¶48]   Federal courts measure the amount in controversy by the value of the property or the value of the debt - either measure satisfies § 1332. See *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977) (amount in controversy is measured by the value of the object of the litigation); *Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 822 (8th Cir. 2011) (same).

[¶49]   There is no plausible argument that the value of The Ruins foreclosure is under $75,000. RRSB's motion never even attempts one.

## I.   Because diversity jurisdiction existed at the outset, this case *could have been filed in federal court* - making mandatory abstention legally impossible.

[¶50]   Section 1334(c)(2) requires the movant to prove that "*absent bankruptcy jurisdiction*," the federal court would have lacked subject-matter jurisdiction. RRSB cannot meet that burden because diversity jurisdiction was available from day one.

[¶51]   This is not a close call. Courts routinely deny mandatory abstention where diversity jurisdiction was independently available. See *In re Farmland Indus.*, 567 F.3d at 1018; *In re Midgard Corp.*, 204 B.R. 764, 776 (B.A.P. 10th Cir. 1997).

[¶52]   The statute is explicit - if the action could have been commenced in federal court independent of § 1334, mandatory abstention does not apply.

[¶53]   RRSB's mistake on this point is not minor - it is fatal.  Even if RRSB had satisfied every other element (it did not), failure on *any one* of the § 1334(c)(2) elements mandates denial. The diversity/amount-in-controversy element is a non-negotiable gatekeeper.

### J. Discretionary Abstention Is Not Warranted

[¶54]   Even if RRSB could clear the mandatory-abstention requirements (it cannot), discretionary abstention is equally unavailable. The twelve-factor test overwhelmingly favors federal retention. RRSB offers no persuasive argument on any factor; in fact, nearly all of them cut directly against remand.

### K.  Judicial efficiency strongly favors federal jurisdiction.

[¶55]   Judge Hastings has already conducted extensive analysis of the same lending relationship, the same bank officers, and the same alleged misrepresentations underlying this foreclosure.

[¶56]   See Ex. A - *Hastings Decision* at 14–18 (detailing allegations of misrepresentation, lending-limit violations, suppression of material facts, and the swapped forbearance agreement).

[¶57]   The federal court is therefore already deep into the factual record. Codington County would be forced to reconstruct that analysis from scratch, re-litigating factual issues the federal court has already vetted. That is the definition of inefficiency.

### L.  State-law predominance does not support abstention.

[¶58]   RRSB repeatedly invokes "*state-law foreclosure issues*" as if this were a typical, stand-alone foreclosure. It is not. The core dispute involves multi-entity banking conduct and alleged fraud, much of which has already been substantively evaluated in federal court. See Ex. A at 16 - 18 (court finding plausible claims for fraud and deceit based on misrepresentations regarding lending capability, permanent financing, and swapped documents).

[¶59]   Federal courts routinely adjudicate state-law foreclosure and contract issues when they directly affect bankruptcy administration. No unsettled state-law issues exist. Nothing in this case involves novel statutory interpretation, and RRSB identifies none.

### M.  There is no novel or unsettled legal question favoring abstention.

[¶60]   Judge Hastings applied settled North Dakota statutory and common law to the deceit and fraud claims. See Ex. A at 14–16 (quoting N.D.C.C. §§ 9-10-02 and 9-03-08 and applying them to the allegations). There is no doctrinal uncertainty that would justify remand.

### N.  The relatedness between this case and the bankruptcy estate is ostensible

[¶61]   The bankruptcy court explicitly recognized that Parkside, Generations, and The Ruins are tied together through the same negotiations, the same loan structures, and the same alleged deficiencies in RRSB's lending practices. See Ex. A at 7–13 (detailing shared contacts, shared misrepresentations, and shared financing expectations across all projects).

[¶62]   The Ruins foreclosure cannot be isolated. Deficiency exposure, valuation, enforceability of documents, and the economic consequences of the same lending-limit violations all affect the estate.

[¶63]   Relatedness is not simply present - it is overwhelming.

### O.  Judicial economy and consistency of rulings require federal retention.

[¶64]   This is not a situation where foreclosure facts are distinct from the bankruptcy matters.

[¶65]   Allowing a state court to adjudicate part of that relationship would virtually guarantee inconsistent findings about:

- whether RRSB had lawful lending capacity;

- whether RRSB misrepresented its access to participation funding;

- whether permanent financing was promised or feasible; and

- whether key documents were swapped or altered without disclosure.

The federal court has already begun resolving these issues.

### P.  The forum-shopping factor squarely disfavors abstention.

[¶66]   RRSB seeks abstention only after losing significant arguments before Judge Hastings. The court rejected RRSB's attempt to dismiss the deceit and fraud claims, rejected its contract-based defenses, and rejected its argument that the forbearance documents foreclosed liability. See Ex. A at 14–18.

[¶67]   Attempting to pivot to state court after an adverse ruling is classic forum shopping. Courts routinely treat this factor as strongly disfavoring abstention.

### Q. Remand would prejudice the bankruptcy estate.

[¶68]   Remand would fracture litigation that the federal court has already begun consolidating, would delay resolution of claims central to the estate and require duplicative depositions and document review.  It would also risk contradictory factual findings on the same conduct and would impair the estate's ability to resolve liabilities across all three projects.

[¶69]   The bankruptcy estate is entitled to a unified adjudication of RRSB's conduct. Abstention would undermine that interest.

[¶70]   Every meaningful discretionary factor - judicial efficiency, consistency, relatedness, prejudice, forum-shopping, and the bankruptcy court's advanced familiarity with the facts - weighs against abstention. Nothing in RRSB's briefing satisfies the burden necessary to justify discretionary abstention.

[¶71]   Federal retention is not merely appropriate; it is required to protect the integrity and efficiency of the bankruptcy proceedings.

### III.    EQUITABLE REMAND IS IMPROPER

[¶72]   Section 1452(b) authorizes remand *only* when equitable grounds support it. RRSB carries the burden, and it cannot meet it. Every equitable consideration favors keeping this case in federal

court. Equitable remand is reserved for situations where state court can resolve the dispute efficiently and without impairing bankruptcy administration. This is the opposite scenario.

### A. Remand would splinter litigation that is factually and legally inseparable.

[¶73]   Parkside, Generations, and The Ruins derive from the same lending relationship. The Hastings decision makes clear that all three projects were shaped by the same core conduct:

- the same RRSB loan officers;

- the same lending-limit calculations and compliance failures;

- the same participation-funding deficiencies;

- the same construction-to-permanent-financing scheme;

- the same document-handling practices, including the swapped forbearance agreement; and

- the same alleged misrepresentations regarding lawful lending capacity and funding availability.

[¶74]   See Ex. A - *Hastings Decision* at 7–18 (detailing the shared negotiations, misrepresentations, and structural similarities across all loans).

[¶75]   The Ruins cannot be divorced from Parkside and Generations without fracturing a single factual narrative the bankruptcy court has already begun consolidating.

### B. RRSB's destruction of key electronic evidence weighs heavily against equitable remand.

[¶76]   RRSB deleted loan officer Martin Peterson's entire email history during the critical period. That includes communications **regarding the entire files for every project**. This is undisputed.

[¶77]   Federal courts uniformly treat spoliation as a serious matter. State courts may address it, but the federal court is already seized of the issue and has inherent authority to sanction misconduct

affecting bankruptcy administration. Remanding now would effectively reward RRSB's destruction of its loan officer's communications - the central evidence governing all three projects.

[¶78]  Equity cannot support remand where a party has compromised the evidentiary record.

### C. The Hastings decision demonstrates why federal oversight is necessary.

[¶79]  Judge Hastings has already:

- evaluated the entire multi-project lending relationship;

- identified material factual disputes across all projects;

- recognized multiple categories of alleged misconduct by RRSB, including suppressed material facts, swapped documents, and misrepresentations of lawful lending ability;

- applied North Dakota's fraud and deceit statutes — the law the forum state itself refused to apply; and

- denied RRSB's motion to dismiss and found the allegations plausible as deceit and fraud.

See Ex. A at 14–18.

[¶80]  The federal court has already done the heavy lifting. It is familiar with the underlying banking practices, the forbearance negotiations, the significance of lending-limit violations, and the consequences of RRSB's alleged document manipulation. Removing The Ruins foreclosure from that context undermines the very judicial economy and consistency that § 1452(b) exists to protect.

[¶81]  When federal courts are already deeply engaged, when the factual matrix is shared across multiple debtor entities, when significant misconduct allegations have already been evaluated, and when a critical evidentiary body has been destroyed, remand is not equitable - it is disruptive.

[¶82]  The equitable-remand factors mirror those for discretionary abstention, and they fail for the same reasons.

[¶83]   Judicial economy is the centerpiece of both § 1334 jurisdiction and § 1452(b) equitable-remand analysis. The purpose of federal bankruptcy jurisdiction is to avoid precisely what RRSB is attempting: piecemeal litigation of a single interconnected lending relationship.

[¶84]   Duplicating this effort is the antithesis of judicial economy.

[¶85]   Parallel litigation across state and federal forums would produce conflicting rulings on:

- whether RRSB had the ability to lawfully make the loans;

- whether permanent financing was promised and feasible;

- whether the forbearance document was swapped without disclosure;

- whether RRSB suppressed material information;

- whether participation funding was mishandled; and

- whether lending-limit violations occurred.

[¶86]   Inconsistent findings on these issues would wreak havoc on administration of the bankruptcy estate and compromise a unified remedy for the Debtors.

[¶87]   A state-court foreclosure on The Ruins cannot be disentangled from these parallel disputes without fracturing the entire litigation.

<u>**CONCLUSION**</u>

[¶88]   For all the reasons set forth above, mandatory abstention is unavailable, discretionary abstention is unwarranted, and equitable remand is wholly improper. The issues in this case are deeply intertwined with the bankruptcy proceedings, federal jurisdiction independently exists, and splintering the litigation into parallel forums would undermine efficiency, consistency, and the orderly administration of the estate. Federal courts do not abdicate jurisdiction except in extraordinary circumstances, and none exist here. This Court is the only forum capable of resolving

the integrated lending relationship at issue without duplication, delay, or inconsistent rulings.

Accordingly, RRSB's Motion to Remand must be denied.

Dated:  December 3, 2025

By:     /s/ Mark A. Schwab
        Mark A. Schwab (SD ID#5422)
        SCHWAB THOMPSON & FRISK
        820 34th Avenue East, Suite 200
        West Fargo, ND 58078
        Tele:  701-365-8088
        mark@stf.law
        *Attorneys for Defendants, The Ruins, LLC,*
        *Craig Holdings, LLC, Craig Properties, LLC*
        *and Jesse Craig*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing **CRAIG DEFENDANTS' BRIEF IN OPPOSITION TO RED RIVER STATE BANK'S MOTION FOR REMAND** was filed and served through CM/ECF on the 3rd day of December, 2025 upon the following and all other interest parties:

Anthony M. Hohn
DAVENPORT, EVANS,
HURWITZ & SMITH, L.L.P.
ahohn@dehs.com

Caren L. Stanley
VOGEL LAW FIRM
cstanley@vogellaw.com

By:     /s/ Mark A. Schwab
        Mark A. Schwab (SD ID#5422)
        SCHWAB THOMPSON & FRISK